**James McKinley ADAMS**

v.

**The STATE of Texas.**

**No. B14–81–242CR.**

Court of Appeals of Texas, Houston (14 Dist.).

May 20, 1982.

Rehearing Denied July 22, 1982.

Timothy Taft, Brad Beers, Houston, for appellant.

Before PAUL PRESSLER, MURPHY and ROBERTSON, JJ.

PAUL PRESSLER, Justice.

Charged by indictment with possession of methamphetamine, the appellant waived his right to trial by jury and entered a plea of not guilty. The court, 639 S.W.2d 942, found the appellant guilty and assessed punishment at four years confinement in the Texas Department of Corrections.

By his first ground of error, the appellant contends that the trial court erred in overruling his Motion to Suppress the search and seizure of the methamphetamine seized from a "brown leather pouch" (hereafter pouch) because such search and seizure was in violation of the Fourth Amendment. The evidence adduced at the Motion to Suppress hearing pertinent to the disposition of this ground revealed that on May 15, 1980, Kenneth Lewis was working at the Ramada Inn West as Chief Maintenance Engineer. The appellant was staying in Room 147. On May 15, Lewis went into Room 147 to check the whirlpool and while there noticed that some acoustic ceiling tile had been slit and removed from the ceiling. Lewis also noticed a scale, a police scanner, a tape recorder and 4 or 5 plastic bags. He never saw any drugs but presumed that it was something concerning narcotics. He called the Houston Police Department Narcotics Division to report what he had seen.

R.B. Johnson of the Houston Police Department Narcotics Division stated that he received a phone call from Lewis on May 15, 1980 and as a result of the conversation went to the Ramada Inn West. Johnson met with Lewis and Jim Scully, the manager. Scully told Johnson that on May 13, 1980 he had been on the motel roof with a pair of binoculars watching for theft when he noticed the appellant arrive in a car, unload some cardboard boxes and take them into Room 147. Johnson further testified that Scully told him the desk clerk had said appellant registered as Jim Smith and produced a credit card under the name of Jim Adams. After conversing with Lewis and Scully, Johnson set up surveillance from a room across the court yard from the appellant's room. Shortly thereafter, the appellant and another person arrived in a car and went into Room 147. They then loaded some luggage into the car and left. Johnson boarded a van driven by another officer and followed. The appellant was a passenger in the car driven by the other person. The car pulled into Courtesy Chev-

rolet, next door to the Ramada Inn, where appellant and the driver went to the service desk. Johnson pulled up behind the car. The appellant walked out of the dealership service door near the car, was arrested and was placed in custody. Officer Johnson stated that the appellant was not able to get into the luggage and that he was not in danger. Johnson stated that the driver gave him consent to search the car and remove the appellant's luggage from its trunk. Johnson removed the luggage and placed it in the police van. After Johnson placed the luggage in the van, he asked appellant if he would consent to a search of the luggage. The appellant refused. Johnson then told the appellant that he would be transferred to the police station pending Johnson's obtaining a search warrant for the luggage. Johnson gave appellant his *Miranda* warnings. Johnson then asked the appellant if there were any firearms or other dangerous items in the luggage that might discharge en route to the station. The appellant replied that there was a pistol in the pouch. Johnson testified that he picked up the pouch and unzipped it. Johnson stated that the butt of the pistol was in plain view as well as a plastic bag containing a yellow white substance. Johnson testified that he recognized the odor of methamphetamine. Johnson testified that he removed the pistol, closed the pouch and layed it back among the luggage. The driver was released with his vehicle and the appellant was taken to the police station. At no time did the appellant ever consent to a search of the luggage.

The appellant contends that the search cannot be justified either as pursuant to a valid warrant since the contraband was seized prior to the issuance of the warrant and formed part of the probable cause for such issuance or by exigent circumstances. We agree.

The affidavit in support of the warrant makes it clear that Officer Johnson had the methamphetamine in his custody prior to the time the warrant was issued. Officer Johnson stated in the affidavit that he asked Jim Adams if there was anything dangerous in the luggage, and he replied 'There was a gun, in the small leather brown pouch.' Affiant [Officer Johnson] open [sic] the small brown leather pouch and along with the pistol there was what appeared to be Controlled Substances which *I seized and later found by testing to be Methamphetamine and Cocaine.*

Officer Johnson clearly indicates that he had the methamphetamine in his possession prior to the issuance of the warrant. Any argument by the state that the warrant would support the search and seizure of the methamphetamine is inapposite. The dispositive issue, therefore, becomes whether the intrusion into the pouch at the arrest site was a valid warrantless search. The seizure of the luggage, which is constitutionally unobjectionable, is distinguishable from the search of the pouch itself and the seizure of the methamphetamine.

*United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) held the warrantless search of a footlocker and a suitcase to be constitutionally impermissible.

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*Chadwick,* 433 U.S. at 15, 97 S.Ct. at 2485. (footnote reproduced p. 425 *infra*).

There is no question that the pouch was in the sole custody and control of the police. Furthermore the state concedes that although the appellant indicated there was a gun in the pouch, there was no consent to search for it or retrieve it.

The state asks us to recognize this as a "special exigency" which may justify a warrantless search. In *Chadwick* the Court stated in a footnote:

> Of course, there may be other justifications for a warrantless search of luggage

taken from a suspect at the time of his arrest; for example, if officers have reason to believe that luggage contains some *immediately dangerous instrumentality,* such as explosives, it would be foolhardy to transport it to the stationhouse without opening the luggage and disarming the weapon. *See, e.g., United States v. Johnson,* 467 F.2d 630, 639 (CA2 1972). (emphasis added).

*Chadwick,* 433 U.S. at 15, fn. 9, 97 S.Ct. at 2485 n. 9.

We decline to hold that a gun is an "immediately dangerous instrumentality" sufficient to justify a warrantless search once the luggage had been reduced to the sole and exclusive possession of Officer Johnson and placed in the police van. *Cf. Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (search for gun in automobile trunk upheld because it might "fall into untrained or perhaps malicious hands" and constitute a danger to the general public); *United States v. White,* 607 F.2d 203 (7th Cir.1979) (search for gun in briefcase upheld to "avert possible danger to themselves [federal agents] and the public by finding and holding the gun").

The search of the pouch was illegal, and the evidence seized should have been suppressed.

■ Where a conviction is set aside because the admissible evidence is insufficient to support a finding of guilt, the judgment is remanded to the trial court for entry of a judgment of acquittal. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Owens v. State,* 576 S.W.2d 859 (Tex.Cr.App.1979).

## ON STATE'S MOTION FOR REHEARING

By motion for rehearing, the State urges reconsideration of our original opinion in light of the recent Supreme Court opinion of *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572, (1982). *Ross* held that

police officers—who have legitimately stopped an automobile and who have *probable cause* to believe that contraband is concealed somewhere within it—may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view.... [T]hey may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.' (emphasis added). *Ross,* —— U.S. at ——, 102 S.Ct. at 2159.

A review of the record reveals insufficient facts upon which the officers could base probable cause to search. Therefore, based upon the facts in this case, the State's Motion for Rehearing is overruled on all grounds.

MURPHY, Justice, dissenting.

I respectfully dissent from the majority's denial of the State's Motion for Rehearing and would urge that the motion be granted and the conviction affirmed. A review of the record reveals sufficient facts provided by Officer Johnson's testimony, to create probable cause for the search in light of *United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Officer Johnson testified of information received from informants that the appellant was engaged in suspicious activity, that scales, a tape recorder, a briefcase concealed in the mattress, a police scanner, and baggies were observed in his room. In addition, a credit card used by the appellant bore a name differing from that under which he had registered, there were numerous small boxes inside larger containers and ceiling tiles had been slit and removed in the appellant's room. The informant also reported having seen baggies containing powdery residue on a prior occasion involving the same person. The officer testified he had successfully relied on similar past information from the same informant and set up surveillance. During the surveillance the informant Lewis told Johnson and other officers that he had observed the appellant leave the room with a box, drive away on a motorcycle with tape over portions of his license plate and return without the box.

Further testimony by Johnson indicated Johnson thought appellant was making deliveries and feared the contraband would be removed or destroyed because he observed appellant hurriedly put his luggage in the trunk of a waiting automobile and leave. Based upon the facts outlined above and these fears, Johnson and his partner followed the car which soon stopped at an automobile dealership nearby and observed the appellant enter the dealership and repeatedly look over his shoulder in a nervous manner. According to Johnson, he felt this behavior was likely to be followed by attempted flight necessitating the action which resulted in the arrest and search at issue. I find these facts sufficient to create a reasonable, articulable suspicion sufficient to create probable cause and to meet the requirement enunciated in *Ross* to authorize a search of the automobile

"that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.' " *Ross, supra* at ——, 102 S.Ct. at 2159.

In light of the facts and circumstances surrounding the events at issue and guided by *Ross,* I would grant the State's Motion for Rehearing and affirm the conviction.