[No. B048007. Second Dist., Div. Five. Oct. 22, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ORLANDO RODRIGUES-FERNANDEZ et al., Defendants and
Appellants.

544

## COUNSEL

Hamar and Hamar, Manuel U. Araujo and Richard A. Hamar for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Sharon Wooden Richard and Patrick T. Brooks, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ASHBY, J.—Following denial of their motions to suppress evidence under Penal Code section 1538.5, defendant and appellant Orlando Rodrigues-Fernandez pleaded no contest, and defendant and appellant Mario Socorro Villapudua pleaded guilty, to possession for sale of cocaine and the allegation that the amount of cocaine exceeded 25 pounds. (Health & Saf. Code,

§§ 11351, 11370.4, subd. (a)(3).) Each was sentenced to a term of 12 years in state prison.

Narcotics officers conducting a surveillance observed an apparent large scale cocaine transaction in a supermarket parking lot. A van was driven from the parking lot to a house where it was observed being loaded with trash bags containing kilo-shaped packages. The van was returned to the parking lot, where the apparent purchaser (appellant Fernandez) resumed control of it. Officers searched the van and confirmed that the trash bags contained approximately 100 kilos of cocaine. A search warrant was then obtained to search the house, believed to be a stash location. Pursuant to the warrant search, the house (appellant Villapudua's) was found to contain more cocaine, packages of currency, documentary records, rifles and a machine gun.

Appellant Fernandez challenges the warrantless search of the van. Appellant Villapudua challenges the search of the house. We affirm. The warrantless search of the van and trash bags therein was proper and supported by probable cause. Search of the house pursuant to a warrant was proper under the good faith exception to the exclusionary rule, despite the inadvertent omission from the warrant of the list of items to be seized.

## WARRANTLESS SEARCH OF VAN

### Facts

The surveillance was conducted by members of the Los Angeles Police narcotics division, major violators unit, who had expertise on the activities of major cocaine distribution organizations. They observed appellant Fernandez park a van in a supermarket parking lot. Fernandez went to an outdoor pay phone and made a beeper call, that is, he dialed a number, hung up without speaking, then received a call which he answered. A few minutes later a female Latin approached Fernandez and conversed briefly with him. The female Latin then entered the van and drove away, while Fernandez remained behind. The van was followed. The female engaged in counter-surveillance driving. She pulled to the curb, allowing a surveillance unit to pass her vehicle. She drove to a residence after first going past it and making a U-turn. She backed the van up to the garage door of the residence. She entered the residence through the front door and shortly thereafter the garage door opened from the inside. A male Latin (codefendant Bastidas, not a party on appeal) began loading the van with large plastic garbage bags. The contents of the bags were pressed tightly against the wall of the bags. The outlines of rectangular kilogram size packages were visible. The protrusions

had the distinct shape of packaged kilograms of cocaine, which the officers had seen hundreds of times before.

The female then drove the loaded van back to the supermarket parking lot, parked it, and walked away.

Appellant Fernandez then entered the van and moved it to a parking place closer to the store. Fernandez entered the store, and in Fernandez's absence Officer Galvan observed the trash bags through a window of the van. Officer Galvan observed the outlines of the distinctive kilo-shaped packages.

When Fernandez returned and started to drive away in the van, he was stopped. Officer Galvan opened the rear door of the van, tore off a corner of one of the trash bags and observed numerous kilo packages of cocaine. There were approximately 100 kilograms of cocaine in the van.

In the officers' expert opinion the use of pagers, beepers and pay phones is typical of major cocaine distribution organizations as a means to avoid wire taps and records of telephone calls. In the officers' opinion the driving of the van involved a "car switch." By means of this technique a purchaser's vehicle can be loaded without the purchaser's learning the location of the supplier's stash of drugs.

*Discussion*

█ Appellant Fernandez contends the police lacked probable cause to believe the trash bags in the van contained contraband. He contends the various activities observed by the officers were consistent with everyday innocent activity and there was no reasonable basis to conclude the trash bags contained contraband rather than ordinary items. There is no merit to this contention. The officers' expertise in patterns of conduct of major cocaine distributors provided reasonable basis to conclude criminal activity was afoot. (*People* v. *Carvajal* (1988) 202 Cal.App.3d 487, 496 [249 Cal.Rptr. 368].) The criminal significance of the beeper call to a public pay phone, counter-surveillance driving, and the car switch as a means of conducting a drug transaction was fully explained. (*People* v. *Carvajal, supra.*) Suspicions of criminal activity were overwhelmingly corroborated by observation of distinctive kilo-shaped objects bulging against the trash bags. The ability of the officers to distinguish the shapes through the skin of the trash bags is a question of fact which was resolved favorably to the People by the trial court. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Two different officers testified to their experience in having seen these distinctive shapes hundreds of times in connection with

cocaine transactions. There was no such testimony in *People* v. *Huntsman* (1984) 152 Cal.App.3d 1073, 1083-1084 [200 Cal.Rptr. 89], cited by appellant.

■ Fernandez next contends that even if the police had probable cause to believe the trash bags contained kilos of cocaine, the officers could not open the trash bags without first obtaining a warrant. Appellant suggests the following distinction: If the police have probable cause to believe that contraband is contained in a vehicle they may search the entire vehicle without a warrant, including any closed containers in which the contraband might be located; but, appellant contends, if the police have probable cause to believe that contraband is contained in a particular closed container in a vehicle but not elsewhere in the vehicle, they may only seize the container and must await a warrant to open it.[1]

The United States Supreme Court recently rejected any such curious dichotomy. (*California* v. *Acevedo* (May 30, 1991) 500 U.S. __ [114 L.Ed.2d 619, 111 S.Ct. 1982], revg. *People* v. *Acevedo* (1989) 216 Cal.App.3d 586 [265 Cal.Rptr. 23].) The distinction advocated by appellant was held unworkable, confusing and anomalous. (*Id.*, 500 U.S. at p. __ [114 L.Ed.2d at pp. 630-634].) The Supreme Court held there is only one rule: The police may without a warrant search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained. (*Id.*, 500 U.S. at p. __ [114 L.Ed.2d at p. 634].)[2]

## SEARCH WARRANT

### *Facts*

Detective Lusby formed the opinion that the residence to which the van was driven was a stash location and that more cocaine would likely be found

---

[1] (Compare *United States* v. *Ross* (1982) 456 U.S. 798, 821-822 [72 L.Ed.2d 572, 591-592, 102 S.Ct. 2157]; *United States* v. *Johns* (1985) 469 U.S. 478, 482-483 [83 L.Ed.2d 890, 895-896, 105 S.Ct. 881] with *United States* v. *Chadwick* (1977) 433 U.S. 1, 13 [53 L.Ed.2d 538, 549-550, 97 S.Ct. 2476]; *Arkansas* v. *Sanders* (1979) 442 U.S. 753, 763-764 [61 L.Ed.2d 235, 244-245, 99 S.Ct. 2586]; *Castleberry* v. *State* (Okla.Crim.App. 1984) 678 P.2d 720, 724, affd. by an equally divided court, *Oklahoma* v. *Castleberry* (1985) 471 U.S. 146 [85 L.Ed.2d 112, 105 S.Ct. 1859]; *United States* v. *Salazar* (9th Cir. 1986) 805 F.2d 1394, 1397; *People* v. *Ruggles* (1985) 39 Cal.3d 1, 11 [maj. opn.], 14-15, [dis. opn. of Kaus, J.] [216 Cal.Rptr. 88, 702 P.2d 170].)

[2] To the extent that *People* v. *Ruggles, supra,* 39 Cal.3d 1, 11-12 adopted a warrant requirement on independent state grounds under the California Constitution, *Ruggles* was superseded by Proposition 8 as to searches conducted after June 8, 1982. (*Id.* at p. 12, fn. 4; Cal. Const., art. I, § 28. subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 887-888 [210 Cal.Rptr. 631, 694 P.2d 744]; *Toomey* v. *Bunnell* (9th Cir. 1990) 898 F.2d 741, 743, fn. 1.)

*In United States* v. *Sanchez* (9th Cir. 1991) 944 F.2d 497, the Ninth Circuit abandoned *United States* v. *Salazar, supra,* in light of *California* v. *Acevedo, supra,* and held *Acevedo* applicable to all cases on direct review not yet final.

there. He went to the district attorney's office to prepare to obtain a warrant to search the house.

Detective Lusby met with Deputy District Attorney Hazell of the major violators section of the narcotics unit. Hazell assisted Lusby to dictate an affidavit of probable cause in support of a search warrant. During preparation of the affidavit they discussed with each other what would likely be found at the house, including cocaine, money, pay and owe sheets, and paperwork establishing occupation and control of the premises. They dictated a six-page affidavit to a secretary who typed it on a word processor. Then the search warrant and affidavit package was assembled.

The first page of a warrant package is entitled "SEARCH WARRANT AND AFFIDAVIT" and is preprinted. The words, "See attached" are typed in to incorporate the other documents.

The second page, which specifies the locations to be searched, has typed in the address of the locations for which the warrant is sought.

The third page of a warrant package specifies the items to be seized. In the case of cocaine distribution organizations prosecuted by the major violators unit, the district attorney has a standard form which lists the same items to be seized in every major cocaine case.[3]

The affidavit of probable cause normally follows the items-to-be-seized-page.

After the affidavit in this case was typed and reviewed, the deputy district attorney instructed the secretary to add the locations-to-be-searched-page and the items-to-be-seized page and to "blue back" the package to be taken to a magistrate. In this instance, however, the standardized items-to-be-seized page was inadvertently omitted from the package. Neither Hazell nor Lusby noticed that the items-to-be-seized page was missing.

---

[3]This form states, "FOR THE FOLLOWING PROPERTY: Cocaine and narcotic paraphernalia, consisting in part of and including, but not limited to, scales and other weighing devices, measuring devices, and containers of various types commonly associated with the storage and use of cocaine; [¶] Articles of personal property tending to establish and document sales of cocaine, consisting of U.S. currency, buyer lists, seller lists, and recordations of sales; [¶] Articles of personal property tending to establish the existence of a conspiracy to sell cocaine, consisting of and including personal telephone books, address books, telephone bills, papers and documents containing lists of names; and, [¶] Articles of personal property tending to establish the identity of persons in control of the premises, vehicles, storage areas or containers where cocaine may be found, consisting of utility company receipts, rent receipts, canceled mail envelopes and keys, and safes or lock boxes and a mobile telephone and telephone beepers."

Detective Lusby expected the items-to-be-seized-page to be added. In his prior experience it was standard and was always inserted by a secretary. Lusby thought he had a legal valid warrant.

When Lusby took the warrant package to a magistrate, the magistrate reviewed the application and approved it. The magistrate did not comment that there were any omissions. He wished Lusby "good luck." This fortified Lusby's belief that he had a valid warrant.

By prearrangement Detective Lusby signalled to the other officers that he had obtained the warrant. Prior to leaving for the district attorney's office Detective Lusby had discussed with his fellow officers what they would search for if he succeeded in obtaining a warrant. The other officers were the same officers who had been involved in the original surveillance. Lusby started to go back to the location himself but before he arrived he was informed the search was completed.

The other officers searched the residence after being informed Lusby had obtained a warrant. They found two boxes each containing 10 kilo packages of cocaine. They found currency, notebooks with names and dollar amounts, rifles, a machine gun, and documentation linking appellant Villapudua and his wife to the residence. Appellant was arrested at the residence.

In denying appellant Villapudua's motion to suppress evidence the trial court found that although the search warrant was invalid, the evidence was admissible because both Detective Lusby and the searching officers believed in good faith that a valid warrant was issued. The court found the officers, all of whom participated in the surveillance, knew exactly what they were looking for. The court found no evidence that the search conducted was overbroad or resulted in seizure of any evidence beyond the scope authorized by the standard items-to-be-seized page which the officers believed had been included in the warrant.

## Discussion

The search warrant was defective in failing to contain a description of the items to be seized. (Pen. Code, § 1529.) The trial court upheld the search under the good faith exception to the exclusionary rule, because the officers reasonably believed in good faith that they had a valid warrant. (*United States v. Leon* (1984) 468 U.S. 897, 922 [82 L.Ed.2d 677, 698, 104 S.Ct. 3405]; *Massachusetts v. Sheppard* (1984) 468 U.S. 981, 988 [82 L.Ed.2d 737, 743-744, 104 S.Ct. 3424]; *People v. Alvarez* (1989) 209 Cal.App.3d 660, 666 [257 Cal.Rptr. 445].)

■ Appellant contends the particular circumstances of this case preclude reasonably objective good faith reliance.[4] There is no merit to this contention.

*Massachusetts* v. *Sheppard, supra* and *People* v. *Alvarez, supra*, are both cases involving a defect in specification of the items to be seized. Both cases upheld a good faith search despite the defect.

In *Sheppard* the affiant was conducting a homicide investigation, but in applying for a warrant on a Sunday he could find only a warrant form for controlled substances. The affidavit itself set forth the specific items sought relating to the homicide, and the affiant brought to the magistrate's attention the inappropriate form. The magistrate assured the affiant that he would make the necessary corrections and would authorize the search the affiant requested. The magistrate neglected to make the changes, however, and the warrant as issued referred to controlled substances. The Supreme Court held the affiant's reliance on the magistrate's approval was objectively reasonable. The affiant could not reasonably be expected to second-guess the magistrate's approval and assurances. (*Massachusetts* v. *Sheppard, supra*, 468 U.S. at pp. 988-991.)

In *People* v. *Alvarez, supra*, 209 Cal.App.3d 660, the affiant sought a warrant to search a residence for controlled substances. Although the affidavit listed the items the affiant sought to seize, the warrant completely omitted the items to be seized. On appeal the defendant argued, as does appellant Villapudua, that the defect on the face of the warrant precluded a finding of objectively reasonable good faith. The appellate court rejected this argument. "Contrary to Alvarez's position, *Leon* does not hold that execution of a facially defective warrant automatically precludes a finding of good faith. To the contrary, the language cited refers to 'the circumstances of the particular case.' Here, those circumstances point toward good faith. Officer Hines prepared a handwritten draft affidavit which contained a particular description of the items to be seized. That description was incorporated into a typed affidavit but not into the body of the search warrant. In reviewing both documents Hines made the understandable mistake of failing to recognize the description had not been repeated." (209 Cal.App.3d at p. 666.)

Appellant emphasizes certain factors present in *Sheppard* and *Alvarez* and contends their absence here is controlling. Appellant cites the facts that (1) in

---

[4]In *United States* v. *Leon, supra*, the court suggested "[D]epending on the circumstances of the particular case, a warrant *may* be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Cf. *Massachusetts* v. *Sheppard, post*, at 988-991." *(United States* v. *Leon, supra*, 468 U.S. at p. 923 [82 L.Ed.2d 698-699], italics added.)

*Sheppard* the magistrate gave specific assurances to the affiant that the warrant was correct. Appellant claims there were no such specific assurances here; (2) in *Sheppard* and *Alvarez* the affidavit contained a description of the items to be seized but the warrant itself did not. Here neither the affidavit nor the warrant contained the items-to-be-seized page; (3) in *Sheppard* and *Alvarez* the affiant personally conducted the subsequent search. Here other officers conducted the search before the affiant could arrive with the warrant.

Contrary to appellant's contention, these distinctions are not significant. (1) Detective Lusby mistakenly assumed that the warrant package included the standard items-to-be-seized page. The magistrate did nothing to alert Detective Lusby to the defect, of which Lusby was unaware. The magistrate did not comment that there were any deficiencies. The magistrate wished Detective Lusby "good luck," which fortified Lusby's reasonable good faith belief that the search he had requested was authorized. A leading commentator has suggested that the specific assurances given in *Sheppard* are not essential in the typical case.[5]

(2) The fact the list of items to be seized was contained neither in the affidavit nor the warrant does not negate Detective Lusby's good faith in the circumstances of this case. The list was omitted, but Detective Lusby believed in good faith it had been included because in his experience it was a standardized list inserted by a secretary. He knew what the list included and mistakenly assumed it was attached. His only error was in failing to proofread. This does not significantly diminish his objective good faith. Even the magistrate did not detect the error. "It was the district attorney's office and the magistrate, not the police officer, who made the critical mistake. Suppressing evidence because the magistrate failed to correct an inadvertent clerical error 'will not serve the deterrent function that the exclusionary rule was designed to achieve.' " (*People* v. *Alvarez, supra,* 209 Cal.App.3d at p. 668.)

(3) The fact that different officers executed the search makes no difference in the circumstances of this case. The officers who conducted the search were part of the same team in the major violators unit who participated in the

---

[5]"The 'assurances' referred to by the Court in *Sheppard* were important precisely because the officer was aware that the warrant in the form he submitted it to the judge was likely incorrect. But in the more typical case, where the warrant form submitted with the affidavit conforms to it (or deviates from it because of circumstances of which the affiant is reasonably unaware), it would seem that usually—certainly when the magistrate neither intimates he has made any changes in the warrant nor engages in conduct which makes it appear that he has made such changes—the affiant-officer is entitled to assume that what the magistrate approved is precisely what he requested." (1 Lafave, Search and Seizure (2d ed. 1987) § 1.3(f), p. 67.)

surveillance leading up to issuance of the warrant. They had discussed the expected search with Detective Lusby. The searches conducted by this unit in these types of cases had become routine enough that the district attorney's office had a standardized form of items to be seized. The trial court could reasonably conclude under the circumstances that both Detective Lusby and the executing officers knew exactly what to search for and were unaffected by the defect on the face of the warrant. (See 1 Lafave, Search and Seizure, *supra*, § 1.3(f) at pp. 67-68.)

The trial court found appellant produced no evidence that the search actually conducted exceeded the scope of what the warrant would have authorized but for the clerical oversight. As stated in *People* v. *MacAvoy* (1984) 162 Cal.App.3d 746, 764 [209 Cal.Rptr. 34], the basic inquiry is whether the officers had a good-faith, objectively reasonable belief that a warrant authorized *the search they actually carried out. (People* v. *Alvarez, supra*, 209 Cal.App.3d at p. 668; *United States* v. *Leon, supra*, 468 U.S. at p. 918, fn. 19 [82 L.Ed.2d 695].) Appellant has not shown that an improper search was conducted or that the absence of the factors he cites negates the officers' good faith belief they had a valid warrant.

Again citing the fact that Detective Lusby did not arrive at the residence with the warrant, appellant next contends this itself renders the search invalid. He contends that the warrant must be present at the premises to be searched. There is no merit to this contention.

■ After a thorough review of the authorities the court in *Nunes* v. *Superior Court* (1980) 100 Cal.App.3d 915, 935-937 [161 Cal.Rptr. 351] concluded that in California there is no statutory or constitutional requirement that a search warrant be exhibited as a prerequisite to execute it. Rather, the warrant is executed by making the search.[6]

Rule 41 of the Federal Rules of Criminal Procedure requires service of a warrant on the person from whose premises the property was taken, but appellant cites no California statutory counterpart to this rule. Furthermore, the federal courts treat the federal rule as ministerial in nature. Its violation does not render a search unreasonable or unconstitutional, in the absence of a showing of prejudice. (*United States* v. *McKenzie* (6th Cir. 1971) 446 F.2d 949, 954 [warrant not served until day after search].)

In *United States* v. *Bonner* (1st Cir. 1986) 808 F.2d 864, as in this case, the agent who obtained a warrant telephoned other agents surveilling the

---

[6]At the police station following his arrest appellant was provided a copy of the warrant and affidavit.

premises, who immediately commenced the search. (*Id.* at pp. 865-866.) The appellate court approved the search stating, "Courts have repeatedly upheld searches conducted by law enforcement officials notified by telephone or radio once the search warrant issued." (*Id.* at p. 869.) The court said that the federal rule requiring service of the warrant does not invariably require service before the search takes place. The court required the defendants to show prejudice, i.e., that defendants " 'were subjected to a search that might not have occurred or would not have been so abrasive had [Rule 41(d)] been followed.' " (*Id.* at p. 869.)

Appellant cites language in *United States* v. *Hepperle* (8th Cir. 1987) 810 F.2d 836, 839, suggesting that the warrant should arrive before the officers vacate the premises. This language is dictum because the warrant did so arrive in the *Hepperle* case. (*Id.* at p. 838.) The *Hepperle* court cited the cases which hold that delay in serving the warrant until the day after the search does not render the search illegal in the absence of prejudice. (*Id.* at p. 839.)

Appellant shows no prejudice in this case, since the trial court specifically noted there was no evidence the search which was conducted exceeded the scope intended by issuance of the warrant.

The judgments are affirmed.

Turner, P. J., and Boren, J., concurred.