[No. B154347. Second Dist., Div. Four. July 25, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE SALDANA, Defendant and Appellant.

COUNSEL

Law Offices of Allen G. Weinberg, Allen G. Weinberg, and Derek K. Kowata for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

VOGEL (C. S.), P. J.—

INTRODUCTION

Following the denial of his motion to suppress evidence under Penal Code section 1538.5, appellant Jose Saldana pleaded no contest to transportation of marijuana. This appeal is limited to the search and seizure issues. (Pen. Code, § 1538.5, subd. (m).) We reverse. An uncorroborated anonymous tip was insufficient to justify the search and seizure.

FACTS

The following facts are shown by the testimony at the Penal Code section 1538.5 hearing:

Deputy Sheriff Patrick Larson was on patrol the evening of June 11, 2001. He received a communication at 7:35 p.m. that according to an anonymous tipster calling from a pay phone, a gray Ford Taurus station wagon with a license ending in the numbers 319 was parked in the parking lot of a restaurant at the intersection of San Gabriel and Garvey in the City of Rosemead, and the driver was carrying a gun and a kilo of cocaine. The same report had been made from the same pay phone to the San Gabriel Police Department 30 minutes earlier.

Deputy Larson went to the described parking lot arriving at 7:44 p.m. and observed a Ford Taurus station wagon with a license plate ending in 319. He entered the entire license plate number in the mobile digital terminal of his patrol car and received information including the address and name of the registered owner, who was appellant Jose Saldana. He entered that address in his terminal and received information that a person at that address was

wanted on a warrant. The person named in the warrant was Bernardo Ruiz Moreno, described as born on August 20, 1973, six feet three inches tall, weighing 170 pounds.[1] The warrant was a $7,500 misdemeanor warrant under Penal Code section 148.9.[2] It was issued in October 1997, but appeared to be still outstanding.

No one was in or around the parked station wagon, so Deputy Larson waited in the parking lot of another restaurant across Garvey Avenue. About 8:45 p.m. he observed appellant exit the restaurant and enter the station wagon. Deputy Larson followed appellant. Before stopping appellant he requested backup assistance because of the report of a gun.

With the assistance of other units a stop and "felony extraction" were initiated. This involves stopping all other traffic and ordering the driver out of the vehicle at gunpoint. Appellant was directed to stop the station wagon, throw the keys out, get out, back up with his hands in the air, and get down on his knees. Usually the suspect is handcuffed. This procedure was used in this case because of the probability appellant had a gun in the car. Appellant was frisked for weapons but none was found on his person. Deputy Larson asked appellant's name and he replied Jose Saldana. Through a Spanish-speaking officer appellant was asked if there was a gun in the car; he replied, "No, I don't even own one at home." Appellant was asked whether the deputies could search his station wagon and he replied yes.

As soon as Deputy Larson opened the station wagon door, he smelled the strong odor of marijuana. He found a plastic trash bag containing marijuana under the rear-facing seat of the station wagon. He also found a plastic baggie of methamphetamine.[3] He did not find a gun. Deputy Larson arrested appellant. At booking at the sheriff's station appellant had a large quantity of cash on his person.

## DISCUSSION

The trial court found appellant was properly detained based on the information available to Deputy Larson, and appellant's consent obtained during the lawful detention validated the search of the station wagon. ■ We independently review the question of law whether the undisputed facts, or facts found by the trial court upon conflicting substantial evidence, show the search and seizure were unconstitutional. (*People v. Coulombe* (2000) 86 Cal.App.4th 52, 56 [102 Cal.Rptr.2d 798].)

---

[1] At the hearing, appellant was described as in his mid-50's, about five feet six inches tall.

[2] Penal Code section 148.9 prohibits falsely identifying oneself to a peace officer.

[3] An additional count charging appellant with possession for sale of methamphetamine was dismissed in the plea bargain.

■ The United States Supreme Court has recently spoken on the issue of when a detention may be justified by an anonymous tip. The court held "an anonymous tip that a person is carrying a gun is, without more, [not] sufficient to justify a police officer's stop and frisk of that person." (*Florida v. J.L.* (2000) 529 U.S. 266, 268 [120 S.Ct. 1375, 1377, 146 L.Ed.2d 254] (hereafter *J.L.*).) The facts in that case were: an anonymous telephone caller told the police that a young Black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Officers responding to the scene saw three young Black males at the bus stop, one wearing a plaid shirt. The men engaged in no suspicious conduct. The officers approached the plaid-shirted suspect, ordered him to put his hands up, and frisked him; they found a gun in his pocket. (*Id.* at p. 268 [120 S.Ct. at p. 1377].)

The Supreme Court held the gun was inadmissible. "[T]he officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, . . . 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,' . . ." Recognizing that in some situations an anonymous tip, suitably corroborated, may exhibit " 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop' " the court found no such indicia there. (*J.L.*, *supra*, 529 U.S. at p: 270 [120 S.Ct. at p. 1378].) "All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." (*Id.* at p. 271 [120 S.Ct. at pp. 1378, 1279].) The fact the tip was "corroborated" as to the "subject's readily observable location and appearance" was insufficient, because this did not show the tipster had knowledge about the concealed criminal activity. (*Id.* at p. 272 [120 S.Ct. at p. 1379].)

The court distinguished (*J.L.*, *supra*, 529 U.S. at pp. 270, 271 [120 S.Ct. at pp. 1378-1379]) its prior case where an anonymous tip had sufficient indicia of reliability and was sufficiently corroborated to authorize an investigatory stop. (*Alabama v. White* (1990) 496 U.S. 325, 329-332 [110 S.Ct. 2412, 2415-2417, 110 L.Ed.2d 301] [anonymous telephone tip that the defendant would leave a certain address at a certain time in a certain vehicle and would go to a certain location with a brown attaché case containing cocaine was corroborated by police observations of the defendant leaving the first location in the described vehicle and driving to the second location; corroboration of the informant's predictions of defendant's future behavior demonstrated the informant had special familiarity with the defendant's affairs; this

was sufficient to support an investigatory stop as distinguished from an arrest on probable cause, because reasonable suspicion for a stop may be based on information of lesser quality and quantity].) The *J.L.* court cautioned, as to *White*, "Standing alone, the tip [in *White*] would not have justified a [detention]. [Citation.] Only after police observation showed that the informant had accurately predicted the woman's movements, we explained, did it become reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine. . . . Although the Court held that the suspicion in *White* became reasonable after police surveillance, we regarded the case as borderline. Knowledge about a person's future movements indicates some familiarity with that person's affairs, but having such knowledge does not necessarily imply that the informant knows, in particular, whether that person is carrying hidden contraband." (*J.L.*, *supra*, 529 U.S. at pp. 270-271 [120 S.Ct. at pp. 1378-1379].)

██ This case is like *J.L.* There was an anonymous telephone tip. The tip contained no internal indicia of the basis for or reliability of the informant's information. The tip did not include predictive information that could be corroborated by observation. The observed corroboration that a vehicle fitting the description was indeed present at the described location did not corroborate the criminal element of the tip that the station wagon contained a gun or cocaine. Appellant's observed conduct of exiting the restaurant, entering the station wagon, and driving away was not suspicious.

The additional factor here, discovery of the outstanding warrant, did not corroborate the anonymous tip, for it had no logical tendency to prove that the current driver of the station wagon was currently in possession of a gun or cocaine. The warrant was not for the registered owner of the station wagon, appellant, but for a person with another name. It was four years old. The only nexus between the warrant and the station wagon was an address. The available information showed only that a person with a different name than the registered owner had the same address four years ago as the currently registered owner and was apparently still wanted for a four-year-old misdemeanor. The existence of the warrant cannot be regarded as corroboration of the anonymous tip.

Even assuming that discovery of the warrant provided an independent ground to *stop appellant's vehicle* to determine whether the driver was possibly the person wanted on the warrant, that possibility was dispelled immediately after the stop. The warrant was for Bernardo Ruiz Moreno, born on August 20, 1973 (i.e., not quite 28 years old at the time of this seizure and search in June 2001), six feet three inches tall, weighing 170 pounds.

Appellant was in his mid-50's, about five feet six inches tall. Appellant was asked his name and answered Jose Saldana, not Bernardo Ruiz Moreno.

As observed by the trial court, this case cannot be treated as if it were a traffic stop on an outstanding warrant followed by a polite request for consent to search the vehicle.[4] The deputies at all times treated appellant as if the anonymous tip were true. Deputy Larson did not stop appellant until backup units arrived. Then a "felony extraction" was initiated. Appellant was ordered out at gunpoint, down on his knees and (assuming the usual procedure was followed) handcuffed. This was not a mere detention for determination of identity to match an outstanding warrant. We conclude this case is not distinguishable from *J.L.* The "felony extraction" stop that led directly to the search of the vehicle and seizure of the evidence was not justified, because the anonymous tip was uncorroborated by any observations or information available to the deputies. Appellant's consent obtained during the illegal detention is tainted by the illegality. (*Florida v. Royer* (1983) 460 U.S. 491, 501 [103 S.Ct. 1319, 1326, 75 L.Ed.2d 229].)

Because appellant's motion to suppress evidence was erroneously denied, the judgment must be reversed and appellant must be given the opportunity to withdraw his guilty plea. (*People v. Ruggles* (1985) 39 Cal.3d 1, 13 [216 Cal.Rptr. 88, 702 P.2d 170].)

DISPOSITION

The judgment is reversed.

Epstein, J., and Curry, J., concurred.

---

[4]When the idea of a detention for investigation on the warrant was raised, the trial court commented, "[W]hat I get from the facts that the officers conducted the felony extract is that the officers didn't put an awful lot of weight on a misdemeanor return warrant from 1997. What . . . they focused on and what they put the weight on was the tip."