Filed 12/9/14  P. v. Pimentel CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C075824 |
| Plaintiff and Respondent, | (Super. Ct. No. SF124905B) |
| v. | |
| ISAEL VILLA PIMENTEL, | |
| Defendant and Appellant. | |

After receiving an anonymous tip regarding possible criminal activity, dispatch notified Lodi Police Officer Brannon Haro, who stopped defendant Isael Villa Pimentel, asked him his name, and searched him for weapons.  Defendant gave Officer Haro a false name.  A different officer, who knew defendant, approached and told Officer Haro defendant's real name.  Defendant was arrested and taken to jail for giving a false name to a police officer.  At the jail, police found an unloaded revolver in defendant's front pocket.  Defendant was charged with three counts of possession of a concealed firearm based on different theories.

1

At a preliminary examination, defendant moved to suppress several pieces of evidence, including the gun and his statements to police, asserting among other things that the original detention was unlawful. The trial court denied his motion and defendant pled no contest to one count of possessing a concealed firearm by a gang member; the remaining counts and allegations were dismissed.

In accordance with the plea agreement, the court sentenced defendant to 365 days in jail and 5 years on probation. The trial court ordered defendant to register as a gang member in compliance with the plea agreement. Registering as a gang member, however, was never actually part of the plea agreement.

On appeal from the judgment, defendant challenges the trial court's ruling denying his motion to suppress on grounds that Officer Haro did not have reasonable suspicion to detain him. We agree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

On July 31, 2013, several Lodi police officers, including Officer Brannon Haro, received calls from dispatch at approximately 8:00 p.m. Although three officers testified differently to what dispatch said, Officer Haro believed dispatch told him there were five to six "gang-type" Hispanic males at Leroy Nichols School, one wearing gray clothing, and any number of them "possibly having guns." Dispatch had received this information from an anonymous source. At least six officers responded to the call and drove toward Leroy Nichols School. As Officer Haro approached the school, he saw three males walking away from the school -- two were on one side of the street, and one (defendant), was crossing the street approximately 15 feet away from the others.

Officer Haro watched the police officer ahead of him pull his patrol car over and walk toward the first two males. Officer Haro saw that defendant was wearing a charcoal gray shirt, so he parked his patrol car and approached defendant, who had now crossed to the other side of the street. Officer Haro asked defendant his name and defendant said his name was "Jose Torres." Thereafter, Officer Haro frisked defendant to see if defendant

2

was in possession of any weapons; he did not find defendant's gun at that time. Upon noticing defendant's blue belt and bandana, Officer Haro asked defendant if he was a Sureño gang member and defendant said "yes."

Approximately one to two minutes after contacting defendant, Officer Haro learned that a man walking on a different street near the school named Ricardo Gonzalez had been stopped and questioned by police. Shortly thereafter, Officer Haro received news that other officers had discovered a gun hidden in the bushes on the street where Gonzalez was detained. At that time another police officer approached Officer Haro, recognized defendant, and told Officer Haro that defendant's name was Isael Pimentel. Confronted with this information, defendant admitted that his real name is Isael Pimentel. Officer Haro then arrested defendant for giving a false name to a police officer.

Officer Haro transported defendant to jail, where he was searched again. Police discovered an unloaded silver revolver deep in defendant's front pocket. Defendant was charged with three counts of unlawful possession of a concealed firearm based on three different theories and one count of criminal street gang activity. The information alleged defendant possessed the gun for the benefit of a criminal street gang. Defendant pled not guilty to all counts and denied the allegation.

At a preliminary examination, defendant moved to suppress the: 1) blue bandana; 2) blue belt; 3) unloaded Smith and Wesson revolver; 4) all observations made by police after the initiation of the unlawful detention; 5) all statements made by defendant or Gonzalez after the unlawful detention; 6) the results of any tests run on the revolver; and 7) all other evidence obtained after the unlawful detention. He argued, among other things, that the detention was unlawful because police did not have reasonable suspicion of criminal activity. His motion to suppress was denied.

## DISCUSSION

On appeal, defendant challenges the denial of his motion to suppress, arguing that Officer Haro did not have reasonable suspicion to detain him. Defendant also argues he

3

was not required to register as a gang member pursuant to the plea agreement or the applicable statute and the court abused its discretion when it ordered him to do so. Because we conclude that defendant's detention was unlawful, we need not address defendant's second argument.

On review of a motion to suppress, we defer to the lower court's factual findings, whether express or implied, if they are supported by substantial evidence. (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597.) Whether, on the facts found, the search was unreasonable under the Constitution is a question of law and is reviewed de novo. (*Id.* at p. 597.)

The decisive facts in this case are what Officer Haro believed dispatch said and what actions he took thereafter to detain defendant. (See *People v. Leyba*, *supra*, 29 Cal.3d at p. 596 ["the trial court must 'find the facts' relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response"].) Therefore, on appeal we must exercise our independent judgment to determine as a matter of law whether, based on Officer Haro's beliefs and perceptions, his detention of defendant was unreasonable under the Fourth Amendment.

A police officer may justifiably stop and frisk a subject if the officer has sufficient knowledge to create a reasonable suspicion that "criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." (*Terry v. Ohio* (1968) 392 U.S. 1, 30 [20 L.Ed.2d 889, 911].) For an anonymous tip to provide reasonable suspicion for an investigatory stop, it must be sufficiently corroborated to exhibit indicia of reliability. (*Florida v. J. L.* (2000) 529 U.S. 266, 270 [146 L.Ed.2d 254, 264] (*J. L.*).) To provide reasonable suspicion, the criminal element of the tip must typically be corroborated, not merely the noncriminal elements of the tip (such as the clothing and location of the alleged suspect). (*Ibid.*) This is not the case, however, when the informant accurately predicts the behavior of the suspect and police witness the

4

suspect carrying out several of the predicted acts.  (*Alabama v. White* (1990) 496 U.S. 325 [110 L.Ed.2d 301] (*White*) [finding sufficient indicia of reliability to provide reasonable suspicion for investigatory stop when anonymous telephone tip accurately predicted the defendant would leave a particular apartment at a particular time in a particular vehicle and drive to a particular motel].)

Courts require "something more" than just an anonymous tip -- such as corroboration of the criminal element of the tip or confirmation of predictive information -- because "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, [citation], 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " (*J. L.*, *supra*, 529 U.S. at p. 270 [146 L.Ed.2d at p. 260]; *White*, *supra*, 496 U.S. at p. 329 [110 L.Ed.2d at p. 308].)

Our case is very similar to *J. L.*  In *J. L.*, an anonymous caller reported to police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun.  (*J. L.*, *supra*, 529 U.S. at p. 268 [146 L.Ed.2d at pp. 258-259].)  Nothing was known about the informant, and police did not know why the informant believed the man was carrying a gun.  (*Ibid.*)  When police arrived at the bus stop, they saw three black males; one, J. L., was wearing a plaid shirt.  (*Ibid.*)  Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct.  (*Ibid.*)  The officers did not see the gun and J. L. did not engage in any threatening or suspicious activity.  (*Ibid.*)  Nevertheless, the officers approached J. L., told him to place his hands up on the bus stop, frisked him, and found a gun in his pocket.  (*Ibid.*)

The Supreme Court held the detention of J. L. was unlawful because despite the accurate description of the location and appearance of J. L., the anonymous tip "lacked the moderate indicia of reliability" necessary for reasonable suspicion.  (*J. L.*, *supra*, 529 U.S. at pp. 269, 271 [146 L.Ed.2d at pp. 259-260].)  In reaching this conclusion, the court

focused on two ways the tip was lacking. First, because the informant did not provide any predictive information like the informant did in *White*, the police were left with no means to test the informant's knowledge or credibility. (*J. L.*, *supra*, 529 U.S at p. 271 [146 L.Ed.2d at p. 260].) Second, there was no corroboration to suggest that the tip was reliable in its assertion of illegality. (*Id.* at p. 272 [146 L.Ed.2d at p. 261].)

"All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J. L." (*J. L.*, *supra*, 529 U.S at p. 271 [146 L.Ed.2d at pp. 260-261].) The officers' suspicion "arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller." (*Id.* at p. 270 [146 L.Ed.2d at p. 260].) "That the allegation about the gun turned out to be correct d[id] not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J. L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." (*Id.* at 271 [146 L.Ed.2d at p. 260].)

Like the police in *J. L.*, here Officer Haro knew nothing about the anonymous informant or why the informant believed defendant and/or his companions were "possibly" carrying guns. Like the anonymous informant in *J. L.,* the anonymous informant here did not state a basis of knowledge or veracity and could not be evaluated or held accountable if the tip was false. These concerns are exactly why the Supreme Court requires anonymous tips to be " 'suitably corroborated' " to exhibit " 'sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop.' " (*J. L.*, *supra*, 529 U.S at p. 270 [146 L.Ed.2d at p. 260].)

Furthermore, unlike the anonymous informant in *White*, the anonymous informant here did not make any predictions regarding defendant's behavior. (*White*, *supra*, 496 U.S. at pp. 326-327 [110 L.Ed.2d at pp. 306-307].) Like the police in *J. L.*, Officer Haro was left with no means to test the informant's knowledge or credibility. Without this

6

predictive information, Officer Haro needed independent corroboration of illegal conduct before he could stop and *frisk* defendant. (See *People v. Saldana* (2002) 101 Cal.App.4th 170, 175 [finding corroboration of the criminal element is required when an anonymous tip does not include predictive information because there is no internal indicia of the basis for or reliability of the informant's information).]

Other than this anonymous tip, there was no reason for the police to suspect defendant of any illegal conduct. Just like in *J. L.*, police could not see defendant's gun, and he was not engaging in any suspicious activity -- he was crossing the street away from a school. It is not enough that defendant's location and appearance corroborated the anonymous informant's tip because though the location and appearance "help[s] the police correctly identify the person whom the tipster means to accuse. . . . [It] does not show that the tipster has knowledge of concealed criminal activity." (*J. L.*, *supra*, 529 U.S at p. 272 [146 L.Ed.2d at p. 261].) The reasonable suspicion necessary for a stop and frisk "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." (*Ibid.*)

Moreover, Officer Haro's recollection of the anonymous informant's information further weakens the People's argument of reasonable suspicion. Officer Haro testified that he believed the informant said that the men "possibly" had guns. This is even weaker than in *J. L.*, where the informant said that the man at the bus stop did in fact possess a gun. (*J. L.*, *supra*, 529 U.S. at p. 268 [146 L.Ed.2d at p. 259].) Furthermore, Officer Haro did not know if the anonymous informant specified which male was carrying a gun. In *J. L.*, the informant said that the black man wearing plaid possessed the gun. (*J. L.*, *supra*, 529 U.S. at p. 268 [146 L.Ed.2d at p. 259].) If this accurate description of one man having a gun was not enough for reasonable suspicion in *J. L.*, an anonymous informant's description of several different men "possibly" having guns is certainly not enough for reasonable suspicion without any corroboration of criminal

activity. Wearing gray near other males and crossing a street away from a school is not corroboration of criminal activity.

The anonymous informant's tip was not suitably corroborated to exhibit sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop. The detention was therefore unlawful and the motion to suppress should have been granted. Because defendant's motion to suppress was erroneously denied, the judgment must be reversed and defendant must be given the opportunity to withdraw his no contest plea. (*People v. Ruggles* (1985) 39 Cal.3d 1, 13.)

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court with instructions to allow defendant to withdraw his no contest plea, to vacate its order denying the motion to suppress, to enter a new order granting the motion to suppress, and for further proceedings in accordance with the law.



                                                                    ROBIE            , Acting P. J.



We concur:



        BUTZ            , J.



        MAURO          , J.



8