Filed 7/21/16  P. v. Sanders CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>DAVID ARON SANDERS,<br><br>　　　Defendant and Appellant. | A144585<br><br>(Sonoma County<br>Super. Ct. No. SCR-641240) |

　　　Defendant David Aron Sanders seeks reversal of his conviction after a jury trial for illegal drug activity.  He contends the trial court erred in denying his pre-trial motion to suppress evidence because the evidence was obtained as a result of his unlawful detention by a police officer who did not have a reasonable suspicion he was engaged in criminal activity.  Therefore, the evidence was obtained in violation of his rights under the Fourth Amendment of the United States Constitution.  We conclude there is substantial evidence that the police officer had a reasonable suspicion and affirm the judgment.

**BACKGROUND**

　　　In June 2014, the Sonoma County District Attorney filed an information charging defendant with possession of marijuana with the intent to sell (Health & Saf. Code, § 11359), allowing a place for preparing or storing a controlled substance (*id*., § 11366.5, subd. (a)), and transportation of marijuana (*id*., § 11360, subd. (a)).  Defendant pleaded not guilty to the charges.

1

Defendant subsequently filed his suppression motion pursuant to Penal Code section 1538.5, which the People opposed. Defendant sought the exclusion of any statements by, or observations of, him, any observations by the officer who detained and arrested him, and any evidence of a crime committed by him. In October 2014, the trial court held a hearing on the motion.

## I.

### *Shelley Dawson's Testimony*

Shelley Dawson, manager of a storage unit rental facility in Santa Rosa, California, testified that she called the police from the facility on October 15, 2013, because she suspected a patron and another man were moving marijuana plants into a storage unit based on what she smelled and saw. Asked at the hearing when she first smelled marijuana that day, she said that sometime before 6:00 p.m. a patron came into her office to pay rent and she told the patron that he "really kind of smell[ed]." The patron said he had been "trimming, because it is that time of year."

Dawson said she "could smell a strong odor of marijuana" even after the patron left. She "went outside and kind of drove around because [the smell] was really strong outside." She found "there was little pieces of it like all in the driveway" by the door to storage unit "D 17." She went back to her office and determined from records that unit D 17 had been leased that past September to defendant, that three others had access to it, and that it had been accessed for the first time that day. Dawson called her corporate office and was told to call 911. She did, telling the police there were "some people there with a whole bunch of marijuana."

According to Dawson, after she made the phone calls, she saw from her office doorway a silver minivan drive into the facility with uncovered marijuana "stacked up in the back." The minivan and a white pickup truck drove up to unit D-17. Two people "unloaded the [minivan] into the storage unit," putting in "whole plants, roots and all." She could tell what it was because the smell was "strong." She had seen and smelled marijuana before and that day "[y]ou could smell it all the way down Santa Rosa Avenue."

2

Dawson called 911 again and gave a description of the two vehicles and their license plate numbers. She saw the vehicles circle around the unit and head to the key pad to exit the facility. About five minutes after her second call, a police car arrived. Dawson opened a gate for the car and saw it pull straight into the driveway. The officer pulled up on the left-hand side and the minivan and truck were on the right-hand side. The officer's car did not block the other two.

## II.

### *Henri Boustany's Testimony*

Sonoma County Deputy Sheriff Henri Boustany testified that on October 15, 2013, at around 6:05 p.m. he was dispatched in his patrol vehicle to a facility on Santa Rosa Avenue to talk to its manager about "her suspicions that there was some illegal activity" happening at a storage unit there. He "understood that she had called in and said she had smelled the strong odor of marijuana" at the facility. Boustany could not recall if the manager reported seeing flakes of marijuana outside a storage unit there or if he just assumed it. He understood he was dispatched by himself because the suspects were no longer at the facility.

Boustany further testified that as he drove to the facility, he was "updated . . . that the vehicles [described as a gold or silver Honda Odyssey minivan and a white truck] had returned and they were unloading more marijuana." Boustany was given a license plate number for the minivan, but could not recall if he was given one for the truck. He located the storage facility two or three minutes after the update and turned into its driveway.

Boustany noticed the "RP" (presumably "reporting person") standing to his left and saw the minivan and truck off to his right, and those vehicles matched the descriptions he had received. They were inside a gate "[a]nd the driver of the minivan appears to be at a . . . key code box starting to enter a code . . . or that's just where he was parked." The vehicles "were in a lane of travel." Boustany entered the facility through a gate and drove directly to the vehicles. He said, "So I pulled into the storage unit . . . maybe about a 45-degree angle. I angled in towards the vehicles pointing my . . . patrol vehicle at those vehicles." He positioned his vehicle "so that the two vehicles could not

3

leave" in an attempt to make contact with the individuals inside them. He was about 50 feet from the gate through which he had entered. The drivers of the two vehicles noticed him and "seemed shocked or stunned to see a cop car drive in."

Boustany said he immediately got out of his vehicle to contact or detain the drivers. Boustany recalled that the truck was behind the minivan and was moving away, but he could not recall if it did this before or after he got out of his vehicle. Based on the drivers' reactions, Boustany suspected the minivan's driver was trying to leave rather than "face law enforcement contact" and Boustany "ordered him to stop moving his vehicle." Boustany smelled marijuana "[a]s soon as I got out of the vehicle, as soon as I opened the door it was overwhelming." He ordered the two suspects out of their vehicles so he could watch them both in one location, since he was alone and concerned about his safety.[1] They did so and Boustany noticed they "were covered in marijuana flakes." It was "obvious" that the two men "were handling more than recreational amounts of marijuana."[2]

On cross-examination, Boustany acknowledged that before detaining defendant, he had no information indicating that Dawson had previous experience with marijuana such that she could recognize the plant and its smell.

### III.

### *The Court's Ruling*

After hearing argument, the court denied defendant's suppression motion. It found that the sight and smell of marijuana were "commonly known" to Sonoma County residents, even if not to people in other parts of the country. Therefore, it rejected defendant's contention that Boustany did not have a reasonable suspicion that defendant

---

[1] Defendant states in his opening brief that he was the driver of the truck, but there was no evidence presented at the hearing indicating whether he was driving the minivan or the truck.

[2] There was evidence introduced at the subsequent trial that 230 pounds of marijuana was found in unit D 17, about 27 bags of marijuana, weighing 24 pounds, and 260.1 grams of finished bud marijuana were found in the minivan, and bundles of tied up marijuana branches weighing 30 pounds were found in the truck.

was engaged in criminal activity because he did not know whether Dawson could identify the smell and look of marijuana.

## IV.

### *Subsequent Events*

Subsequently, defendant was tried and found guilty of the charges brought against him.  The court placed defendant on probation for 48 months, conditioned on his serving nine months in county jail with credit for time served, and ordered him to pay certain fines and fees as well as restitution in an amount to be determined.  Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues that we should reverse his conviction because there was insufficient evidence to support the trial court's order denying his suppression motion. He contends the trial court erred when it found that "all residents of Sonoma County are familiar with the sight and smell of marijuana," and argues Boustany had no legitimate reason to suspect he was doing anything illegal because informant Dawson's knowledge, or lack thereof, about marijuana was unknown to Boustany.  We conclude there is substantial evidence to support the court's ruling.

Penal Code section 1538.5 states that a defendant may move to suppress evidence on the ground that "[t]he search and seizure without a warrant was unreasonable." (Pen. Code, § 1538.5, subd. (a)(1)(A).)  An officer may detain an individual, temporarily, if there is reasonable suspicion to suspect that the person detained may be involved in criminal activity.  (*People v. Bennett* (1998) 17 Cal.4th 373, 386–387.)

" ' "[A] detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts, that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." ' "  (*People v. Suff* (2014) 58 Cal.4th 1013, 1053–1054.) Reasonable suspicion cannot be supported based on a mere hunch or feeling that something does not look right; instead, it must be supported by articulable facts that

5

would warrant an officer of reasonable caution to believe that criminal activity is afoot. (*United States v. Sokolow* (1989) 490 U.S. 1, 7.)

When evaluating whether an officer had reasonable suspicion to detain someone, we consider the " 'facts known to the officer at the time.' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 149.)  We " 'defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.)  However, "[o]n appeal we consider the correctness of the trial court's ruling *itself*, not the correctness of the trial court's *reasons* for reaching its decision." ( *Letner and Tobin*, at p. 145.)

The parties first debate when the detention actually occurred.  "A detention occurs when an officer intentionally applies physical restraint or initiates a show of authority to which an objectively reasonable person innocent of wrongdoing would feel compelled to submit, and to which such a person in fact submits." (*People v. Linn* (2015) 241 Cal.App.4th 46, 57.)  Defendant argues the detention occurred when Boustany, according to Boustany's own testimony, positioned his patrol vehicle in front of the minivan and truck so as to impede the drivers' ability to maneuver around his vehicle— before he smelled or saw any marijuana.  Since Boustany had no basis for relying on Dawson's smelling and seeing marijuana, the argument goes, he did not have a reasonable suspicion that justified defendant's detention.  The People disagree, arguing Boustany did not detain defendant until after Boustany exited his patrol vehicle and smelled marijuana, when he ordered the drivers to stop.[3]  According to the People,

---

[3]  The People also argue that technically defendant's appeal is defective because no evidence was actually presented below indicating he was subjected to any search or seizure, but they concede the issue on appeal in order to avoid an ineffective assistance of counsel claim.  In any event, the People's argument is unpersuasive because the People conceded in their brief below that the police had detained defendant and searched his property.

Boustany's own observations of marijuana justified his subsequent detention of defendant.

The trial court made no express finding about when the detention occurred. However, its analysis rested on its conclusion that Sonoma County residents commonly know the smell and look of marijuana. This indicates the court may have found the detention occurred before Boustany got out of his vehicle and detected the odor of marijuana himself, as defendant argues.

We have some concern about the trial court's reliance on assumptions about familiarity with marijuana by Sonoma County residents generally. Our own research indicates that courts are reluctant to issue warrants based solely on an informant's uncorroborated report of smelling marijuana, for example. (See *United States v. DeLeon* (9th Cir. 1992) 979 F.2d 761, 765 [holding "a warrant cannot be based on the claim of an untrained or inexperienced person to have smelled growing plants which have no commonly recognized odor," referring to marijuana plants]; cf. *United States v. Kerr* (9th Cir. 1989) 876 F.2d 1440, 1445 [finding it material to the existence of probable cause that an officer, by detecting the odor of marijuana "materially corroborated the informant's allegation that [the defendant] was growing marijuana"].) On the other hand, "reasonable suspicion is a lesser standard than probable cause, and can arise from less reliable information than required for probable cause . . . ." (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.) Also, we are aware that in some counties in our state cultivation and use of marijuana are more prevalent than others, and trial judges are more familiar that we are with conditions in their counties.

In any event, we need not resolve whether the detention occurred after Boustany placed his vehicle in front of the minivan and truck, or whether the trial court could rely on its view of a Sonoma County resident's general knowledge about marijuana to find reasonable suspicion. The totality of the circumstances present at the time Boustany placed his vehicle in front of the minivan and truck provide a sufficient basis to satisfy the reasonable suspicion standard.

First, there are several indicia of reliability about Dawson's reports that were known to Boustany at that time. Dawson, rather than being an anonymous tipster, had called the police about one of her own patrons in her capacity as the manager of the storage unit facility, and had remained there waiting for the police to arrive. An officer could reasonably infer that a person in such a position would not so act regarding a patron unless she was particularly sure that she had smelled and seen marijuana. To act incautiously in such a circumstance could adversely affect her work reputation, as well as the reputation of the business she managed, with both patrons and the police. Furthermore, a police officer could reasonably infer that a manager reporting to police about possible criminal activity at the facility was following a protocol and/or training that included an emphasis on providing accurate information in such circumstances. Second, Dawson had called the police twice. (See *People v. Dolly* (2007) 40 Cal.4th 458, 468 ["The tip's reliability was further enhanced by the tipster-victim's second call to 911"].) Third, she had reported significant details, i.e., descriptions of the vehicles involved, a license plate number for one, and that she had seen the subjects loading marijuana plants into a storage unit. Finally, Boustany was able to confirm the accuracy of Dawson's vehicle descriptions immediately upon his arrival at the facility. (See *id.* at p. 468 [noting the tipster provided a "firsthand, contemporaneous description of the crime" and "an accurate and complete description of the perpetrator and his location, the details of which were confirmed within minutes by the police when they arrived"].)

Defendant cites two cases in support of his argument. In the first, *People v. Jordan* (2004) 121 Cal.App.4th 544 (*Jordan*), an anonymous caller contacted 911 to report there was a man at a specific location in possession of a gun. (*Id.* at p. 548.) The caller provided a description of the man and his general location. (*Id.* at p. 549.) The appellate court found this information of readily observable aspects of a person's appearance and location insufficiently reliable to justify the defendant's detention. (*Id.* at pp. 554, 558.)

Defendant also cites *People v. Saldana* (2002) 101 Cal.App.4th 170, in which the appellate court reversed the lower court's denial of a suppression motion for lack of

reasonable suspicion. There, an anonymous tipster called police and accurately described the defendant's location and vehicle, gave a partial license plate number for the vehicle, and said the defendant was carrying a gun and a kilo of cocaine. (*Id*. at pp. 172–173.) Police observed defendant and learned he had an outstanding warrant, whereupon they detained him and discovered marijuana and methamphetamine in his vehicle. (*Id*. at pp. 172–174.) The appellate court's ruling hinged largely on the informant's anonymity, that his "tip contained no internal indicia of the basis for or reliability of the informant's information," and that police observing defendant saw nothing suspicious about his conduct. (*Id*. at pp. 175–176.)

Similarly, in a case cited in *Jordan* and *Saldana*, although not by defendant, *Florida v. J.L.* (2000) 529 U.S. 266 (*J.L.*), an anonymous tipster reported to police that a man, whose appearance and location the tipster accurately described, was carrying a gun, but the tipster offered no explanation for how he knew this to be the case and police saw no gun when they encountered the man. The United States Supreme Court found this anonymous and unexplained tip was insufficient to justify a "stop and frisk" search of the man because "[a]n accurate description of a subject's readily observable location and appearance . . . does not show that the tipster has knowledge of concealed criminal activity." (*Id*. at p. 272.)

*Jordan*, *Saldana* and *J.L.* are inapposite because they involve anonymous tips from informants whose reliability could not be ascertained. Boustany had information about Dawson, who was not anonymous. Her position as the manager of a business, her persistence in calling a second time, and the details she provided (including that she had seen plants being loaded into a storage unit) were all reasons to believe her report was reliable. Further, upon arriving at the facility, Boustany observed suspicious aspects of defendant's behavior, as he noticed that the two men appeared to be "shocked and stunned" to see his patrol car when he pulled into the storage facility. "Nervous, evasive behavior is undoubtedly a potentially significant factor to be considered in determining whether . . . reasonable suspicion . . . exists." (*People v. Evans* (2011) 200 Cal.App.4th 735, 754, citing *Illinois v. Wardlow* (2000) 528 U.S. 119, 124 ["nervous,

9

evasive behavior is a pertinent factor in determining reasonable suspicion"].)
Defendant's nervous behavior, when considered with the other evidence, is a further
reason to suspect that defendant might be engaged in criminal activity.

Finally, contrary to defendant's contention that nothing indicates he posed a
danger to public safety, Boustany encountered him as defendant was about to drive away
from the storage unit facility. Boustany could have reasonably suspected defendant
might pose a risk to others on the public roadway, since Dawson's report suggested
defendant might be driving while under the influence. (See *People v. Wells*, *supra*,
38 Cal.4th at p. 1083 ["California cases indicate that a citizen's tip may itself create a
reasonable suspicion sufficient to justify a temporary vehicle stop or detention, especially
if the circumstances are deemed exigent by reason of possible reckless driving or similar
threats to public safety"].)

In short, we conclude based on the totality of the circumstances that the court's
order denying defendant's suppression motion was supported by substantial evidence.

### DISPOSITION

The judgment is affirmed.

10

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.

*People v. Sanders* (A144585)

11