Filed 12/7/21  P. v. Kittrell CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058809 |
| v. | (Super. Ct. No. 18NF0770) |
| CHRISTOPHER WAYNE KITTRELL, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer and Lance Jensen, Judges.  Affirmed.

Erica Gamble, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Generally, a criminal defendant has "the privilege to be free from comment upon the assertion of a constitutional right." (*People v. Keener* (1983) 148 Cal.App.3d 73, 78 (*Keener*).) For instance, a prosecutor cannot comment on a defendant's silence during a jury trial (a *Griffin* error). (*Griffin v. California* (1965) 380 U.S. 609, 614-615 (*Griffin*).) Nor can a prosecutor ordinarily comment on a defendant's post-*Miranda* silence (a *Doyle* error). (*Doyle v. Ohio* (1976) 426 U.S. 610, 611 (*Doyle*).)

Here, a police officer stopped a car. Defendant Christopher Wayne Kittrell was in the front passenger seat. As Kittrell got out of the car, the officer saw a meth pipe in the front passenger door and a locked backpack on the floorboard. During a patdown search, Kittrell refused the officer's request to search his wallet.

A trained police dog sniffed the car and alerted to the presence of narcotics in the passenger compartment. The police officer arrested Kittrell, opened his wallet, and a small key dropped out. The officer then opened the backpack with the key. The officer found heroin, methamphetamine, scales, and syringes in the backpack.

Prior to trial, Kittrell moved to suppress the evidence from the backpack. A magistrate denied the motion. During the trial, Kittrell testified neither the key nor the backpack belonged to him. During closing argument, the prosecutor commented on the fact that Kittrell had refused the officer's request to search his wallet.

The jury found Kittrell guilty of four drug sales charges. Kittrell contends the warrantless search of his backpack violated the Fourth Amendment. Kittrell also contends the prosecutor committed misconduct during closing argument by commenting on his refusal to allow the police to search his wallet.

We find the search of the backpack in the car was permitted under the automobile exception to the Fourth Amendment's warrant requirement. We further find the prosecutor committed misconduct during closing argument; however, we do not find the error to be prejudicial.

Thus, we affirm the judgment in all regards.

2

# I

## FACTS AND PROCEDURAL BACKGROUND

On December 15, 2017, Officer Steve Thompson was following behind a car with an expired license plate. When the car parked in front of a convenience store, both the driver and Kittrell (the front passenger) started to get out. Thompson activated his vehicle's emergency lights and instructed the two people to get back inside of the car. When other officers arrived, Thompson asked Kittrell to step out of the car.

As Kittrell was getting out of the car, Thompson saw a methamphetamine pipe in the passenger door. Thompson also saw a backpack on the floorboard in the front passenger area, which was locked with a small padlock. Thompson conducted a patdown search of Kittrell and felt a bulge in his pocket. Kittrell said it was a wallet. Thompson asked Kittrell if he could remove the wallet; Kittrell said no.

Thompson had Kittrell sit down on a nearby curb. Officer Jeremy Hunziker arrived on the scene with Jarvis, a trained search dog. Jarvis sniffed the car and alerted for the presence of drugs. Thompson asked Kittrell if he had a key to the lock on the backpack. Kittrell said he did not. Thompson then placed Kittrell under arrest for possession of the methamphetamine pipe.

Thompson took Kittrell's wallet out of his pocket, opened it, and a small key fell out. Thompson opened the backpack using the key. Thompson found methamphetamine, heroin, and syringes inside.

### Court Proceedings

The prosecution charged Kittrell with transportation and possession of heroin for sale, and transportation and possession of methamphetamine for sale.

Kittrell filed a pretrial motion to suppress the evidence found in the backpack. (Pen. Code, § 1538.5.) Officers Thompson and Hunziker testified at the

3

hearing. The magistrate denied the motion: "I believe the search of the backpack was legal and justified. No violation of the Fourth Amendment."

At a jury trial, Kittrell testified on his own behalf. Kittrell said the driver of the car picked him up about two hours before he was arrested. Kittrell testified the backpack was in the car when he got in and it did not belong to him.

Kittrell said when he got out of the car Officer Thompson conducted a patdown search and felt his wallet "which was in my front pocket and asked me what that was. I told him it was my wallet. He asked to search it, and I refused, and then he proceeded to continue to search me." Kittrell testified after the dog alerted for the presence of drugs, Thompson "came over after searching the car briefly to ask me about my wallet, and then when I refused to let him see it again, he then placed me under arrest for the methamphetamine bong that was supposedly in the door."

Kittrell also said Thompson placed him in handcuffs, then "removed the wallet from my pocket and proceeded to search through it." Kittrell testified Thompson only found cash in his wallet. Kittrell said after Thompson searched his wallet, Thompson set it down and went back to the car. Kittrell stated Thompson then "held up a key and said, "'look what I found in his wallet.'" Kittrell said he had never seen the key before. Kittrell testified when Thompson "said he found the key, I remarked to the other officers standing around 'that key didn't come from my wallet.' 'You see that key didn't come from my wallet,' but none [of] the officers replied."

The jury found Kittrell guilty of all charges. The trial court imposed a five-year sentence (two years jail, followed by three years mandatory supervision).

4

## II

## DISCUSSION

Kittrell contends:  A) the trial court improperly denied his motion to suppress evidence; and B) the prosecutor committed prejudicial misconduct.

### A.  *The Motion to Suppress Evidence*

Kittrell argues the search of his backpack was unconstitutional "because the prosecution failed to establish that the warrantless search of appellant's locked backpack fell within a recognized exception to the warrant requirement."

When reviewing a ruling on a defendant's motion to suppress evidence, appellate courts "'"'defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.'"'"  (*People v. Johnson* (2018) 21 Cal.App.5th 1026, 1031-1032.)

Under Penal Code section 1538.5, a trial court may grant a motion to suppress evidence "only if exclusion is mandated by the federal Constitution."  (*People v. Banks* (1993) 6 Cal.4th 926, 934.)  The initial burden is on the defendant to establish that the government conducted a search without a warrant.  The burden then shifts to the prosecution to justify the warrantless search.  (*People v. Williams* (1999) 20 Cal.4th 119, 127.)  A warrantless search is presumptively unreasonable.  (*Vernonia School Dist. 47J v. Acton* (1995) 515 U.S. 646, 652-653.)  The prosecution must prove by a preponderance of the evidence the search falls within an exception to the Fourth Amendment's warrant requirement.  (*People v. Torres* (1992) 6 Cal.App.4th 1324, 1334-1335.)

One of the exceptions to the warrant requirement is known as the automobile exception:  "One such exception is for vehicles used on a public thoroughfare or readily capable of such use.  If a vehicle is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the search of the vehicle."

5

(*People v. Allen* (2000) 78 Cal.App.4th 445, 449.) "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." (*South Dakota v. Opperman* (1976) 428 U.S. 364, 367-368.)

There are two requirements under the automobile exception:  the police have lawful access to the vehicle, and they have probable cause to believe it contains contraband or evidence of a crime.  (*People v. Evans* (2011) 200 Cal.App.4th 735, 753.)

The scope of a search that may be conducted under the automobile exception extends to any container within the vehicle capable of concealing the object of the search, including a passenger's belongings.  (*Wyoming v. Houghton* (1999) 526 U.S. 295, 306-307.)  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  (*United States v. Ross* (1982) 456 U.S. 798, 825 (*Ross*).)

The automobile exception includes locked containers.  (See *Ross*, *supra*, 456 U.S. at p. 822.)  Although the United States Supreme Court recognizes the distinctions between "paper bags, locked trunks, lunch buckets, and orange crates" the Court has nonetheless held "the central purpose of the Fourth Amendment forecloses such a distinction.  For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right . . . as the sophisticated executive with the locked attaché case."  (*Ibid*., fn. omitted.)

Here, when ruling on the motion to suppress evidence, the magistrate who conducted the hearing thoroughly analyzed multiple legal issues as applied to the facts.  Consequently, we will quote from the magistrate's analysis at length:

"These issues are sort of like puzzles where you have to look at all the pieces and you have to look at the totality of the circumstances.

6

"So the defendant was properly detained because he is in a car with expired vehicle registration. So the detention is okay. Then when the officer who was lawfully at the side of the car . . . in plain view he sees a methamphetamine pipe . . . that is allowed because he is legally there. He can look into a car. He doesn't need a warrant to look into a car.

"Now when he sees the methamphetamine pipe, he has probable cause to believe that the car has drugs. It would be negligence for an officer to look in and see that and then not do anything about it. Then while this lawful detention is going on a canine dog shows up . . . and the dog alerts to the presence of drugs on the passenger side where the defendant was seated with the backpack between his legs.

"Well, not only did the officer have probable cause to believe that there were drugs in the car based on the methamphetamine pipe, now he has more probable cause because now there is a hit by Jarvis indicating that there [are] drugs in or near I guess the passenger compartment. [¶] . . . [¶]

"So now the defendant is arrested, and now the search incident to lawful arrest cases come into effect. The officer is allowed to search the defendant's person, which he lawfully did, and he previously did a pat-down. He left the wallet in the defendant's pocket because he didn't believe it was a weapon, which was probably the correct thing to do. But now that the defendant was arrested the officer could lawfully search the defendant and his clothing.

"I agree . . . that an arrested person . . . may be searched without a warrant as incident to lawful arrest. So you got the detention of the car. You got the PC with the plain view doctrine and the canine alert. You got the arrest and then the search incident to arrest.

"So during the lawful seizure of the wallet the key comes out. They already have probable cause to believe that the backpack has drugs in it based on the

7

location of the backpack, the hit on the passenger side of the car, and the methamphetamine pipe on the passenger side of the car.

"So I don't find it offensive that the officer would just take the key and open up the backpack, and low and behold the seizure of the drugs and the syringes and everything else corroborates the dog hitting on that side of the car."

We have little to add to the magistrate's cogent analysis. Ultimately, the search of Kittrell's backpack did not violate the Fourth Amendment because Officer Thompson had lawful access to the backpack and he had probable cause to believe it contained contraband. (See *Ross*, *supra*, 456 U.S. at pp. 822-823.)

Kittrell appears to recognize the automobile exception under the holding of *Ross* is dispositive. (See *Ross*, *supra*, 456 U.S. at p. 822.) Nevertheless, Kittrell argues there are "courts that sometimes decline to follow *Ross*." Kittrell "invites this court to do so here," asserting a California Supreme Court opinion "is instructive." (See *People v. Ruggles* (1985) 39 Cal.3d 1 (*Ruggles*).) We disagree.

In *Ruggles*, the California Supreme Court found an officer's warrantless search of a suspect's briefcases located inside a car's trunk was unlawful under the *California Constitution*. (See *Ruggles*, *supra*, 39 Cal.3d at pp. 1, 12-13.) However, after the passage of Proposition 8, in order "[t]o decide whether relevant evidence obtained by assertedly unlawful means must be excluded in a trial . . . , we look exclusively to whether its suppression is required by the *United States Constitution*." (*People v. Glaser* (1995) 11 Cal.4th 354, 363, italics added.)

Thus, *Ruggles* is no longer "good law" and therefore it is not helpful to Kittrell's argument on appeal. (See *People v. Rodrigues-Fernandez* (1991) 235 Cal.App.3d 543, 548, fn. 2 ["*Ruggles* was superseded by Proposition 8"].)

*B. Prosecutorial Misconduct*

Kittrell contends the prosecutor "committed misconduct when she argued the jury could use appellant's refusal to consent to a search as evidence of his guilt."

We evaluate claims of prosecutorial misconduct under well-established standards. "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

In this part of the discussion, we will: 1) review general legal principles concerning prosecutorial misconduct; 2) summarize the relevant portions of the trial transcript; and 3) analyze the law as applied to the facts.

*1. General Legal Principles*

"'A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state.'" (*People v. Hill* (1998) 17 Cal.4th 800, 819-820.) However, "'the term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

In reviewing a prosecutor's comments to the jury, "we must view the statements in the context of the argument as a whole." (*People v. Cole* (2004) 33 Cal.4th 1158, 1203-1204.) Generally, a prosecutor has "'wide latitude to discuss and draw inferences from the evidence at trial,' and whether 'the inferences the prosecutor draws are reasonable is for the jury to decide.'" (*Id*. at pp. 1202-1203.) The relevant question is

9

"'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of-remarks in an objectionable fashion.'" (*Ibid*.)

"As a general rule, an officer may not search a suspect's pockets during a patdown unless he or she encounters an object there that feels like a weapon." (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1237.) Under the plain-touch doctrine, if an object's "incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 374-375.)

However, since the scope of the patdown search is limited by its justification—a search for weapons—if the incriminating character of an object felt in the patdown is not apparent by the time the officer determines that it is not a weapon, the object may not be seized or searched. (*Minnesota v. Dickerson*, *supra*, 508 U.S. at p. 375; compare *People v. Loudermilk* (1987) 195 Cal.App.3d 996, 1005-1006 [a wallet *may* be seized and searched *after a suspect has been arrested* under the warrant exception for searches incident to lawful arrests].)

Generally, a criminal defendant has "the privilege to be free from comment upon the assertion of a constitutional right." (*Keener*, *supra*, 148 Cal.App.3d at pp. 78-79.) In *Keener*, a victim reported to police defendant had raped her. After police went to his apartment, defendant refused to come out. After a three-and-a-half-hour negotiation with a SWAT-team, defendant surrendered. (*Id*. at p. 76.) The trial court allowed the prosecution to introduce evidence of the "siege of defendant's apartment" in order to prove his "consciousness of guilt" of the charged offenses. (*Id*. at p. 78.) This Court of Appeal found the evidence was "marginally relevant" and had been improperly admitted: "Although an individual's refusal to consent to a warrantless entry of his residence may be open to various interpretations and is not encouraged, the assertion of the right itself cannot be a crime nor can it be evidence of a crime." (*Id*. at pp. 78-79.)

"Defendant's refusal to leave his apartment was privileged." (*Keener*, *supra*, 148 Cal.App.3d at p. 78, capitalization omitted.) "Presenting evidence of an individual's exercise of a right to refuse to consent to entry in order to demonstrate a consciousness of guilt merely serves to punish the exercise of the right to insist upon a warrant. It is of no consequence that police had a right to enter without a warrant here, nor does it matter that defendant spoke to the police during the siege. 'The right to refuse [entry] protects both the innocent and the guilty, and to use its exercise against a defendant would be, as the court said in *Griffin*, [*supra*, 380 U.S. at pages 614-615] a penalty imposed by courts for exercising a constitutional right.'" (*Id.* at p. 79.)

### 2. *Relevant Proceedings*

During the prosecution's case-in-chief, Officer Thompson said on direct examination: "So during the pat-down search I felt a wallet. I asked the defendant if I could search the wallet. He said no." Thompson testified after Kittrell's arrest, he then had lawful authority to search his person. Thompson said when he searched through Kittrell's wallet, the key "fell out of the wallet."

During the defense case, Kittrell testified on direct examination that Officer Thompson asked if he could search his wallet and he refused. The prosecutor asked Kittrell on cross-examination: "You had a wallet on you that night, correct?" Kittrell responded: "That's correct." The prosecutor asked: "And you did not want the officers to look inside your wallet?" Kittrell said: "That's still within my rights to privacy, and I did not want to be searched." The prosecutor asked: "You told them a couple of times in fact that the officers could not search your wallet; is that correct?" Kittrell said: "That's correct, or my person for that matter."[1]

---

[1] Kittrell did not object to Officer Thompson's direct testimony or the prosecutors' cross-examination regarding his refusal to allow a search of his wallet.

During closing argument, the prosecutor argued to the jury: "The officers ask, hey, can we search you? No. Can we look in your wallet? No. Why? You have nothing to hide. What's typically in a wallet? Your I.D., cash, credit cards. Who cares. Yeah, here you go. Not the defendant. He has a key in there and that key goes specifically to his drug bag. Doesn't want the officers -- wants to protect that wallet at all costs. [¶] Well, officers are legally allowed to look through his wallet. He says, well, I know my rights. Well, in this instance, he was wrong."

Later on, the prosecutor continued: "So let's talk about the defendant's testimony. It is not my bag and it's not my key. Now, if any of you are hoping for a Perry Mason moment, I am very sorry. I am a decent lawyer, but I can't promise one of those you see on TV where all of a sudden I get the defendant to admit he's been selling and it's all a lie. But he did slip up and I think some of you jurors caught it. If you didn't catch it, I will tell you what it is, but he did make a mistake in his testimony. He says, I don't want the officers to search my wallet. Doesn't want them too."

Kittrell's counsel objected: "Improper argument." The court overruled the objection, but admonished the jury: "Ladies and gentlemen nothing the attorneys say is evidence. In their closing arguments the attorneys discuss the case, but their remarks are not evidence. Only the witness's [statements] are evidence." The prosecutor then proceeded with closing argument, "[d]oesn't want the officers to search his wallet."

### 3. Application and Analysis

There appear to be no published California opinions directly on point, but there are several cases from other jurisdictions that specifically hold a prosecutor commits misconduct by commenting on a defendant's refusal to consent to a warrantless search. (See, e.g., *State v. Palenkas* (1996) 188 Ariz. 201, 212 ["prosecution's references to defendant's invocation of his fourth amendment rights to refuse to consent to a warrantless entry . . . violated defendant's due process rights to a fair trial"]; *United*

12

*States v. Thame* (3d Cir. 1988) 846 F.2d 200, 206-207 ["error for the prosecutor to argue that [defendant's] reliance on his fourth amendment rights constituted evidence of his guilt"]; *Padgett v. State* (Alaska 1979) 590 P.2d 432, 434 [error for prosecutor to comment on defendant's refusal to consent to a search of his car]; *United States v. Taxe* (9th Cir. 1976) 540 F.2d 961, 969 ["prosecutor's comments on the [defendants'] refusal to consent to a search of their trucks was misconduct"].)

The foregoing opinions are fundamentally an extension of what is commonly referred to as a "*Griffin* error" or a "*Doyle* error" in numerous California opinions. (See, e.g., *People v. Hubbard* (2020) 52 Cal.App.5th 555, 562 ["We evaluate claims of *Griffin* error by inquiring whether there is 'a reasonable likelihood that any of the [prosecutor's] comments could have been understood, within its context, to refer to defendant's failure to testify'"]; *People v. Denard* (2015) 242 Cal.App.4th 1012, 1019 ["the prosecutor's argument could have been understood by the jury only as a comment on appellant's silence, and thus constituted *Griffin* error"]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1339 ["a prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided *only* by the defendant, who therefore would be required to take the witness stand"]; *People v. Galloway* (1979) 100 Cal.App.3d 551, 556 ["*Doyle* error only occurs when the prosecutor inquires about a defendant's failure to talk to law enforcement officers after he has been given his *Miranda* rights"].)

Here, at the point when Officer Thompson conducted the patdown search, Kittrell had the right under the Fourth Amendment to refuse Thompson's request to search his wallet. The prosecutor improperly argued to the jury Kittrell's refusal was circumstantial evidence of his guilt. That is, the gist of the prosecutor's argument was Kittrell had refused to allow Thompson to search his wallet because Kittrell knew it contained the key to the backpack, which would ultimately tie him to the illegal evidence.

13

In short, the prosecutor's closing argument was prosecutorial misconduct because it constituted an improper "comment upon the assertion of a constitutional right." (*Keener*, *supra*, 148 Cal.App.3d at pp. 78-79.)

The Attorney General argues Kittrell forfeited his claim of misconduct in the trial court because "he failed to specifically object to the prosecutor's argument on the same constitutional grounds he raises here." We disagree.

"An objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide. [Citations.] In a criminal case, the objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented." (*People v. Scott* (1978) 21 Cal.3d 284, 290.)

Here, after referring to the iconic Perry Mason television show, the prosecutor argued Kittrell "did make a mistake in his testimony. He says, I don't want the officers to search my wallet. Doesn't want them too." Kittrell's counsel objected, stating only: "Improper argument."

The trial court overruled the objection, but the court went on to admonish the jury that statements of counsel are not evidence. Although counsel's objection did not use the phrase "prosecutorial misconduct," the court's admonishment supports a reasonable inference that the court understood the issue presented by the objection.

Alternatively, the Attorney General argues the closing argument "cannot be read as a reference to appellant's exercise of his constitutional right to refuse to consent to a search of his wallet." The Attorney General theorizes: "Saying that appellant did not *want* the officers to search his wallet is not the same as saying that appellant *refused to give consent* to a search of his wallet." Respectfully, the Attorney General's distinction is nothing more than legal sophistry. (See *People v. Modesto* (1967) 66 Cal.2d 695, 711 [finding *Griffin* error where prosecutor argued that the defendant, who was the only person aware of the facts, was "'*just sitting*'" in the courtroom].)

14

The Attorney General also seeks to distinguish the holding in *Keener*, *supra*, 148 Cal.App.3d 73. The Attorney General argues "appellant is not complaining about the admission of evidence . . . as was the case in *Keener*. Instead, he is complaining about a statement made by the prosecutor during closing argument." Again, this appears to be a distinction without a meaningful difference.

Relying on *Griffin*, *supra*, 380 U.S. 609, and *Doyle*, *supra*, 426 U.S. 610, this court in *Keener* held the admission of evidence that a suspect did not allow the police to enter his home "violated the privilege to be *free from comment* upon the assertion of a constitutional right." (*Keener*, *supra*, 148 Cal.App.3d at pp. 78-79, italics added.) Thus, we think the scope of the *Keener* holding fairly includes the proposition that a prosecutor cannot *comment* on a defendant's assertion of his Fourth Amendment rights as substantive evidence of his guilt during a closing argument.

We now turn to whether Kittrell was prejudiced by the misconduct. (See *People v. Watson* (1956) 46 Cal.2d 818, 835-837 [defendant must show a reasonable probability the outcome of the proceeding would have been different in the absence of the error]; see also *Chapman v. California* (1967) 386 U.S. 18, 23-24 (*Chapman*) [prosecution must show the error was harmless beyond a reasonable doubt].) Prosecutorial misconduct is evaluated under *Chapman*, to the extent federal constitutional rights are implicated; misconduct is evaluated under *Watson* if exclusively state law issues were involved. (*People v. Adanandus* (2007) 157 Cal.App.4th 496, 514-515.)

In this case, since Kittrell's constitutional rights are implicated, we employ the more rigorous *Chapman* standard. (See *People v. Thomas* (2012) 54 Cal.4th 908, 936-937 [*Chapman* standard applies to *Doyle* error]; see also *People v. Denard*, *supra*, 242 Cal.App.4th at p. 1022 [*Chapman* standard applies to *Griffin* error].)

Here, Officer Thompson testified on direct examination that Kittrell refused to consent to a search of his wallet prior to his arrest. Kittrell did not object to this

15

testimony.[2]  Indeed, Kittrell himself testified to these same facts both during his direct examination and on cross-examination.  Further, although the prosecutor improperly commented on Kittrell's refusal to allow a search of his wallet, the prosecutor's comments were brief, and the court immediately admonished the jury:  "Nothing the attorneys say is evidence."  (See *People v. O'Malley* (2016) 62 Cal.4th 944, 998-999 [juries are presumed to have followed a court's admonishment].)  Moreover, the evidence of Kittrell's guilt regarding the substantive charges was overwhelming.

In conclusion, considering Thompson's testimony (without objection), Kittrell's own testimony, the court's admonition, and the overwhelming evidence of Kittrell's guilt, we find the prosecutorial misconduct during closing argument to be harmless beyond a reasonable doubt.  (See *Chapman*, *supra*, 386 U.S. at pp. 23-24; see also *United States v. Young* (1985) 470 U.S. 1, 11-12 [courts have no general authority to overturn criminal convictions simply to punish for prosecutorial misconduct].)

---

[2] We cannot say on direct appeal whether this absence of an objection by Kittrell's trial counsel constituted ineffective assistance because we do not know the possible reasons. (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [claims of ineffective assistance of counsel based on matters outside the appellate record are "more appropriately litigated in a habeas corpus proceeding"].)

### III
### DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.